We'll proceed to the second case here, United States v. Williams. We'll hear from the defendant's lawyer. Good morning, Your Honors. May it please the Court. My name is Elizabeth Franklin Best and I am here on behalf of Mr. Alvis Williams. The fundamental question in this case is whether Alvis should have been allowed to represent himself at trial. He asked for it, didn't he? He did ask for it. You've got a lot of questioning in this going on. And it looked like to me the judge went out of his way. He tried his best to do everything he could to ensure that he knew what he was doing. But he just made up his mind and wanted to do it. He asked a number of questions and a number of relevant questions. What could a judge have done beyond that? He needed to inquire as to Alvis's background. That is the law that this circuit has imposed. And it's something that would have been relevant for the determination of whether or not Alvis should have been allowed to represent himself. As this Court makes clear and has most recently been affirmed and inducted. The case turns on that determination right there. Either we agree or disagree. If we agree with it, we go with you. If we don't, then we just act like it is. As to the question of whether the background was relevant for the determination of the issue, I mean, yes. I mean, I think that that is what Gallup has held. I think that that is what Barefoot has reaffirmed. And I think most recently what Ducton has reaffirmed. That a trial court judge under these circumstances needs to make some inquiry or needs to have some understanding of the background of a particular defendant. I mean, this Court has taken issues of self-representation very seriously. This Court does not recognize any forfeitures by conduct. We impose the additional requirement that waivers of counsel be clear and unequivocal in addition to being knowing and intelligent. And an analysis of the Circuit's cases on the issue of self-representation reveals that the Court closely assesses the salient personal characteristics of the defendants in these cases. So the background you're talking about is educational background. Educational. But anything that would sort of remark on the salient personal characteristics of a defendant and his ability to represent himself. So, for example, in Lewis, the Court remarks in the defendant's psychological report, notes that he has personality disorders, below average intelligence. That's not a per se requirement, is it? Well, whether or not a judge has some understanding of the background of the defendant, I think is a per se requirement. I mean, I think that is part of what informs a judge's discretion in deciding whether or not a particular defendant should be allowed to represent himself. You want us to go beyond the Feretta requirements. In this case, it seemed to me that he followed Feretta, and you want us to go, which is all he really has to do, and you want us to go beyond that. But I don't know that it, I mean, well, I think that what Feretta, well, I mean, in fact, Feretta sort of notes that the defendant in that case was competent. I mean, that was something that was inquired in Feretta. I mean, that you had sort of the normal kind of defendant who was seeking to represent himself. This guy was found competent to stand trial. He was found competent to stand trial, but that determination was sort of made or the decision to represent himself was made without an understanding that he was, in fact, very significantly cognitively limited. Where do you see that he was very significantly cognitively limited? I mean, I understand that your brief indicates he didn't pass the GED, but what it leaves out is that he did ultimately pass it. He didn't pass it the first time, and also his IQ is 91. That's not very cognitively. Well, I mean, there are several things that we can say about that particular score that's in the record. I mean, first of all, that was the Weschler abbreviated scale of intelligence, which is something that is, and we only have the one number. I mean, we have the one number. That particular test actually has three different subtests, so I'm not quite sure exactly why we only have the one number and whether or not there may have been some sort of reporting error there. But in any event, that particular test came from while he was at the Department of Juvenile Justice. And, I mean, they're not in the business of sort of making sophisticated intelligence determinations. I mean, there are certainly other things in there that should have alerted the judge that there may be a competency issue here. First of all, I mean, there was his performance at the trial. Well, let's deal with the first part of letting him do it in the first instance. Now, you say he should have inquired about his background, and I say that looks like educational background. You mean he should have asked the defendant? Well, he could have made some inquiries from the defendant. He could have asked his public defender. No, he wouldn't represent them anymore. Well, but he still could have asked for purposes of sort of asking. Before he let him go. Well, whether or not there were any sort of communication issues. Well, what did he have to say to him? He passed the GED, and he has an IQ of 91. And what else? Well, he could have said, you know, we're having some difficulty here. My client is not understanding. He thinks I'm working against him. Every case you get where they don't want to represent themselves, there's a misunderstanding going on with a lawyer somewhere, and the lawyer says he doesn't quite understand. You've done cases like this probably. You've seen them. And what happens is you get up, and this guy just wants to represent himself. You put him in the trial. Now, the standard review is what? Is it clearly error? Well, I think, I mean, at the time that I did my briefing, I thought it was sort of a plain error. I do think that in light of Ducton, it may, in fact, be de novo. I mean, since at the time that Alvis was seeking to represent himself, he was largely left to his own devices in making the request. You said at the time you did your brief, now you think differently, so you're arguing differently than what you have there? Well, I think under either standard. It looks like it's plain error from this perspective, but you're now arguing it's not? Well, no, I think under either standard, Alvis is entitled to a new trial. But I do think that in light of – It's not a standard to say the judge clearly erred, not to ask this defendant himself, are you competent and where did you go to school and did you pass? And his answer is, I passed the GED, Your Honor, because he wants to represent himself. And he's not going to say my IQ is nine to one probably, but he's going to say I know what I'm talking about. But we also know that, I mean, Alvis Williams was smoking marijuana at the age of seven. I mean, we may not be talking about intellectual disability. Well, no, but there's more to just the issue of incompetence here. I mean, this is what the Fourth Circuit case law says, is that we have to make some inquiry into the background in order to even exercise the discretion. He was smoking at age seven. He would ask him, did you smoke marijuana at age seven or earlier? I'm just trying to put yourself in the position of the trial judge who went out of his way to try to tell his guy, don't represent yourself, don't represent yourself, and went all through these questions and everything. Because we give a list from this court of questions. We don't say this is exhaustive. None of these questions are per se. You don't have to. You don't have to do this. We just give you a good example. The trial judge has to get a feel for it. And it's really tough. We appellate judges like to be all powerful and stuff, but we're not in that courtroom. And we didn't see this guy, and we didn't go through this back and forth. And the only little part that you say he didn't ask about is background on this. If it's background and any sort of salient personal characteristics, it would be relevant to deciding whether or not he should have been allowed to represent himself. I think that that's what this court's precedents hold. And, again, sort of going back to the line of cases from this court. Because then he decided he shouldn't have represented himself. That's amazing, isn't it? Well, that's true. After he saw the result, he said. Well, he certainly needed representation at the point of his appeal. That's for sure. Do you have any case law that specifically mandates an inquiry into the defendant's educational background? No, Your Honor. Nothing that says that. But I do think that when you look at this court's precedents, when you look at Lewis, when you look at Becton, for example, it was a self-representation case where the court noted that the defendant was a person with an associate's degree. In Barefoot, there was extensive evidence of incompetency and mental illness. In Brunson, this court remarks on the nonsensical pro se motions and arguments. In Parker, the judge ordered a competency evaluation. In Bernard, there was a long history of mental illness. In this case, you know that, don't you? It is. Had he made that defense that the public defender represented, then the argument before us right now would just about bet you would be you should have allowed this guy to represent. He has a GED. He has all this stuff here. There's no way he should be able to do it. He couldn't win in this case. There was going to be an appeal on this one way or the other. Well, you know, it is a rapidly evolving area of law. And I think that, you know, what we see in Indiana v. Edwards is that, I mean, these issues of competency, these issues of cognitive functioning are becoming increasingly more important to this court and also to the United States Supreme Court. You start requiring maybe some put in the competency aspect of it, maybe a special examination by a professional. Is that what you're saying, that to get to exercise one's right? Because, I mean, a person can represent themselves. I mean, there's no constitutional requirement you be represented by someone else. Fundamentally, you can represent yourself. Absolutely, Your Honor. And I do think, though, that whenever you have a pro se defendant, you need to be sort of cognizant that there may be some intellectual problems there because it's not a rational decision in large part. I mean, what I think would probably make the most sense is if whenever you have one of these defendants seeking to represent himself, the court appoints a guardian ad litem to sort of report to the court what may or may not be going on. Is that done? Not in this case, but it's something that could be done by the inherent authority of the court. But, I mean, because it is sort of difficult to say to defense counsel, you know, what's wrong with this defendant when counsel could already be sort of in conflict with that particular defendant. There's a tab that says the trial judge has sua sponte interrupted the middle of the trial and says, you are no longer going to be able to represent yourself. I'm going to appoint counsel. I cannot recall a case. Me neither. Your Honor. But I do think that after Alvis's opening argument, I mean, I think at that point the judge really should have entertained some serious issues as to his ability to represent himself. I mean, he quite clearly did not understand what the judge had instructed him, what he could and could not discuss. I mean, and he sort of went in there, you know, and just did whatever he wanted to anyway. So, you know, kind of going back to this idea that there's sort of an evolution in, oh, I'm about to run out of time, an evolution in this area. I mean, when you look from the time of, like, Godinez up until the point of Indiana v. Edwards, I mean, there's been sort of a real change in the United States Supreme Court precedents on how we regard these issues. I mean, so, for example, back in 1989, it was still okay to execute the mentally retarded. In Atkins v. Virginia in 2002, that was certainly no longer the case. In Tenard v. Drecke in 2004. Any decision you take to the United States Supreme Court, but I would probably think you wouldn't want to put this one before. And that may very well be true, Your Honor. I was only just giving my thoughts. I'm not saying that you wouldn't win it. I like to be surprised. But just sort of briefly, I mean, even if the judge did sort of accurately decide that he should have represented himself, there's still sort of the issue of the judges impeding his or hampering his ability to do so effectively. The shackles, for example. Were they seen? Not that it does not appear that they were seen. But the question of why he was even shackled to begin with. I mean, had he had an attorney. What about a seized shackle? The jury didn't see it. Anybody? Well, the question is, well, I mean, the question is why he was made to sort of do this, even though it was really made to wear the shackles. The record reflects the U.S. Marshal Service suggested it. And that is accurate, Your Honor. But I would note that at the time that that decision was made, I mean, if he had been represented by counsel at that point, I mean, counsel certainly would have been heard on that issue and would have had somebody to advocate on his behalf. Sort of the absence of his attorney was sort of an additional kind of restriction on him that would not have been present. Had he had an attorney.  The judge to remove. No, Your Honor. I don't know that he knew that he was able to do that. It should be removed. Ask the trial judge. That would have been, would it have been helpful to have them remove that? It would have been helpful, Your Honor. But I think we have a very cognitively limited defendant here who probably did not realize that he could have asked the judge. The decision was made. I don't, no reason to believe that he sort of understood that he had the ability to ask the judge to do these things. You know, at the time that he did, apparently he wanted some witnesses subpoenaed to his case. That's not lack of, that's not indication of a lack of cognitive ability. That's a lack of a legal education. Well, I mean, but I'm not sure that we can really separate the two necessarily. I mean, for some particular defendants, I mean, if we had say like a Jeffrey Skilling or somebody like that, we could sort of easily say that that's a lack of legal acumen. But when you've got somebody like Elvis Williams, I mean, I think again it's, you have to kind of look and search for the possibility of some kind of intellectual disability. Well, you said earlier that he just did what he wanted to do clearly in the opening statement. So I don't think anything, he knew he was going to do what he wanted to do. So he wanted to ask to have the shackles taken off. Well, but I mean, again, I mean, he, he, he said what he had to say, but I don't know that that was, I mean, he didn't, he clearly didn't understand sort of the legal restrictions on, on what he should be doing. I mean, he, this is somebody who clearly did not really appreciate what he had gotten himself into. And I think that the judge was under an obligation to sort of at least search in some manner for whether or not there was an intellectual disability that may have contributed to that. I mean, I see this case really as kind of an extension of Indiana v. Edwards in Indiana v. Edwards was about you know, the court's ability to, to not allow a mentally ill defendant to represent himself. I think this one presents a case of whether or not an intellectually disabled person should be allowed to represent himself. And so that's I, I will reserve the rest of my time unless there's additional questions. Okay. Thank you. Thank you very much. We'll hear from the government attorney. May it please the court. Jay Richardson from the district of South Carolina. And I'll probably pick up where judge Wynn was. The district of South Carolina. Isn't that nice? You got the whole state. The whole state. Well, not many of us get the whole state, but the people in Greenville believe they're actually in the Western district. As judge Floyd can tell you, they think they're a different district. Judge Anderson in this case, as judge Wynn recognized was walking the thin line that this court's described. When they asked about the educational background of this person here, he's obviously got something going on there. I think there are two reasons for that. I think first, what judge Anderson did is he used the bench book from the federal judicial center and went through the list of questions that that bench book provides. And it does not include anything about educational background. One of the reasons it does not include anything or an explanation for that is this court in Spates v. Clark, a 2013 decision unpublished that I believe judge Thacker was on the panel, described how Ferretta imposes no requirement that the trial judge address the defendant's education or background on the record. The next one we need to publish. Right. I think that part is clear. But I think the more important part in this particular case is judge Anderson was intimately familiar with Mr. Williams. This was in no way the first time he had been there. The record reflects Mr. Williams pled guilty to unrelated drug charges in front of judge Anderson in 2010. And when he pled guilty, that colloquy does include questions about educational background to assure that it's knowing and intelligent and competent. So why shouldn't the same hold true when you're going to represent yourself and may be convicted? Well, I think that in this case what we know is that as of 2010, he had inquired into those questions. That colloquy does include educational background. The pre-sentence report does include that information. So when he sentenced Mr. Williams back in either late 2010, early 2011, he had gone through that inquiry with this particular defendant. So he'd gone through this entire process previously where the defendant was represented by counsel. He had also seen in 2000. That surely brings up an issue that I don't think we want to get in too much of is the fact that he'd gone through previously. In other words, he's subjective. Makes sense. I mean, like you say, if he's familiar, sometimes in these small areas you do know the defendant quite well. You do know his history. You might have even known him in high school the whole bit. I think Judge Anderson is a little bit older than Mr. Williams. Of course he is. But I think we need to just focus on what was done here. Let's keep it at this trial. And I think the strongest thing probably going in your direction is that there's really no ball or plate per se list of questions to ask. The court simply has to satisfy himself. This person is in a position that can represent himself. Fundamentally, individuals can and should be able to represent themselves if they want to. I mean, there's no opposite requirement. You must have counsel, even though everybody knows that's certainly the way you should go in nearly every case. So I think the case you have before you, let's not make it more than, let's not extend it too much. Because I don't want to get into something about what he previously knew and what he did know subjectively as a judge, even though that's relevant. That may be an issue that will come up in the future, but I don't want to deal with that today. Well, if I might, Your Honor, I hate to disagree on that issue. One of the things that Judge Anderson, during the February 6th hearing, he discussed his prior interactions with Mr. Williams in his 2010 guilty plea. This isn't a sort of abstract idea. He discussed the previous relationship, what had occurred at that event. And so it wasn't, Judge Anderson didn't in the abstract know Mr. Williams. He discussed it during the February 6th hearing. That point is well taken. And so I do think in this particular context, I think it's relevant. He also discussed during that hearing the supervised release violation hearing he had had. And there was also extensive discussion with respect to Mr. Williams' pro se filings. And as the Court is aware, I believe Mr. Williams has filed a few things with this Court. Mr. Williams was quite literate and quite able to articulate his views. As Judge Thacker pointed out, his views were not legally correct, but they're not nonsensical if there's a distinction between those two. They are in some sense legally inaccurate, so it shows his lack of legal training. But it actually illustrates his literacy and understanding of what is going on. And I think reading those pro se filings, and those were discussed as well during the February 6th hearing, in conjunction with what Judge Anderson knew about him, it didn't matter where he went to school or how long he went to school. You can read Mr. Williams' writing and understand he is highly literate. He's not trained in the law, but he understands what's taking place. He made the filings and made argument. Judge Anderson allowed him to supplement his counsel's argument on one or two occasions prior to this hearing. And he was able to articulate not legally correct arguments, but arguments that to a lay person are not nonsensical. You know, in contrast to this court's Curry decision, where you have someone who's a sovereign citizen type individual who's making almost nonsensical arguments, the court in Curry found that those were okay. If you want to make those arguments, that's what you're entitled to do. But these weren't those types of arguments. These were very straightforward and legitimate, although not legally correct. I think taking a step back, though, and looking at the Bernard decision, I think it's important to recognize that the capacity to represent yourself is not really an inquiry for this, excuse me, for the trial court to engage with. It's the capability, it's the competency to waive the right, not the capability to represent yourself at trial that is at issue. Right? And that's what Bernard goes through, and as Judge Thacker wrote that opinion, goes through and explains that distinction, that what we have is competency to waive the right, and that's the floor, and that as long as that is established, that the trial judge has done all that it's required to do. And so I think in that context, particularly in light of Bernard, there certainly couldn't be plain error in this case. And we do think plain error applies. That's footnote seven of the Bernard decision. In this case, Mr. Williams was not left at his own devices in this hearing. Mr. Burnside, who is a very good public defender in South Carolina, represented him throughout the February 6th hearing, including explaining to the court when some motions had been filed and articulating some things in an ex parte hearing that the court found important. Mr. Richardson, I probably have heard enough on that issue. Is there anything else in the assignment of errors that were raised by him that caused you any concern that you feel like you ought to talk about? I don't think so, Your Honor, unless anybody has questions. Thank you very much. Thank you, Your Honor. I guess, okay, I was waiting for my clock to come back on. But just a couple of sort of brief remarks in response. I mean, first of all, if, in fact, Albus Williams is intellectually disabled, I mean, that really does not affirm the dignity that is the lifeblood of the right to self-representation. You know, I noticed that there was some discussion about how literate he was, how much he did seem to know about the law. But I think if you look at his performance at trial, I mean, he gave an incoherent opening statement. He had a fixation on the window tint issue. On numerous occasions, he had to ask the judge to repeat his questions. He clearly did not understand the effect of signing the stipulation. He was not successful in getting the district court judge to allow him to recall a particular witness. When he took the stand, he only asked himself three questions. And then after he was cross-examined, he opened the door to a number of highly prejudicial gun charges coming in. Again, this is somebody who— An incompetency or just bad lawyering on his part. Again, I don't think that the judge— A law license that can make a few arrows, too. Not to open the door for things. I see those all the time. You shouldn't have done it. But, you know, the strategy involved, I don't know what his strategy would have been, but I'm sort of torn as to whether this, in fact, is he's not able or he's just not a lawyer. He doesn't understand the law. And that is exactly— We know that, but every defendant that comes there, probably unless he's been to law school, is not going to understand the law. But that is exactly the issue. I mean, we don't know whether it was lack of legal acumen or whether it was perhaps like an intellectual disability. I mean, these are the things—this is sort of an evolving area of law. And I think that there is—I think what the case law shows is that there is some duty on the part of the judges to sort of ferret out or to sort of see whether or not these things— You would ask us to include a requirement now that the additional line of questions be made and that they be made to specific people. How would we fix it? Well, I mean, you could fix it by just sort of making clear that part of what is required is that the background be known to the judge. I think that implicitly that's— What are we making clear? Background is a big statement. Okay. Is there any reason— Greenville is opposed to Charleston. I don't know if that makes a difference. Is there any reason to believe that the defendant suffers from any sort of significant mental illness and or intellectual disability or any other mental condition that would impact his ability to represent himself? I guess in this case, I'm just trying to understand if he did ask those questions, what would the answers have been? The answers I'm getting so far is he passed the GED and he has an IQ of around 91. Well, except that—I mean, again, that's not— That's the initial inquiry. Once you get in the court, that's your personal observation. I understand that. But the initial—what are you going to find out? You're not going to find out he's been in a mental institution. You're not going to find out that he has an IQ below 70. But we may have been able to find out what the probation agent was able to find out, which is that he was learning disabled classes, for example, that he had difficulty passing the GED, that he had never had any meaningful employment history. I mean, that's the sort of thing that you look at with an Atkins inquiry, things that— A lot of people don't like that, had no meaningful employment. I'm not trying to pick on the case. I'm just trying to say the trial judge has a job to do, and if we're going to send something back that says you erred on it, clearly erred on it, I'm just trying to understand how do we do that? I mean, they are doing the best job they can do that, and Judge Anderson has been around a while. He kind of knows how to deal with it. Absolutely, absolutely. And if we did look beyond it, he knew all this stuff that you're talking about, obviously, because he'd been through it. This is probably not the case that I can feel the point you want to make is a good one, but I'm not sure this is the case to do it on. And I appreciate that. I mean, I understand the record is really perhaps not as well developed as we would like it, but I do think because there is sort of a recognition that there are people with these sorts of limitations who may or may not have intellectual disability who are getting into the system, they're not being ferreted out appropriately, and maybe this just isn't the way that we want the justice system to work. So on behalf of Mr. Williams, I mean, I would say that he would like to go back to court and have a judge determine whether or not he was actually intellectually fit to represent himself in this case. But thank you very much. Thank you. We'll come down to Greek Council. Ms. Franklin-Vest, I do want to say on behalf of the court, we realize you were court appointed for this case, and without the services of those who accept appointments like you do, it would be very difficult to represent individuals such as Mr. Rush. We thank you for your service, and always we thank the government's attorney, too.
judges: James A. Wynn, Jr., Henry F. Floyd, Stephanie D. Thacker